TEXAS DEPARTMENT OF PUBLIC
SAFETY, Appellant

v.

Charles V. MOORE, Appellee.

No. 03–98–00135–CV.

Court of Appeals of Texas,
Austin.

Nov. 30, 1998.

---

4. Now TEX.R.APP. P. 26.3.

Dan Morales, Attorney General, Martin J. Thompson, Jr., Assistant Attorney General, Austin, for Appellant.

Paul Dodson, White, Huseman & Pletcher, Corpus Christi, for Appellee.

Before Justices POWERS, JONES and KIDD.

MACK KIDD, Justice.

Appellant, the Texas Department of Public Safety (the "Department"), failed to recommend appellee Charles Moore for promotion to the position of Assistant Commander of the Criminal Intelligence Service. Moore sued under the Human Rights Act claiming reverse discrimination and, by later amendment, under the Uniform Declaratory Judgments Act (the "UDJA") seeking a declaration that the Department acted outside its statutory authority in filling four high-ranking positions without examining applicants based on merit. The trial court granted summary judgment against Moore on the discrimination claim. The trial court also granted partial summary judgment in favor of Moore, declaring that the Department acted outside its statutory authority in filling the four positions, and ordered those positions vacated. The Department appeals. In its points of error, the Department challenges (1) the trial court's jurisdiction under section 411.007 of the Texas Government Code and the UDJA; (2) the trial court's decision to order the four positions vacated; and (3) the trial court's discretion in awarding attorney's fees. We will affirm the trial court's order in part and reverse in part.

## BACKGROUND

In October 1993, the Department announced a vacancy in the position of Assis-

tant Commander of the Criminal Intelligence Service. Commander Don Plemons, the officer charged with making the recommendation for appointment to fill the vacancy, orally interviewed seven candidates. Among these candidates were Charles Moore, a white male, and Enrique Garcia, an Hispanic male. Plemons recommended Garcia, and Garcia was appointed to the position. Moore sued in district court.

■ Moore originally brought suit under the Human Rights Act claiming he was the victim of reverse racial discrimination when he was denied promotion in favor of Garcia.[1] Moore later amended his petition to include a declaratory judgment claim based upon the Department's alleged failure to comply with section 411.007(b) of the Texas Government Code, which requires that the Department make promotions or appointments based upon merit determined by examination. See Tex. Gov't Code Ann. § 411.007(b) (West 1998). The trial court granted cross motions for summary judgment; declaring that the Department failed to comply with all the requirements of section 411.007(b) in promoting Garcia to Assistant Commander of the Criminal Intelligence Service, and dismissing Moore's discrimination claim for failure to exhaust the necessary administrative remedies.[2] Moore does not appeal the dismissal of his discrimination claim.

Before the trial court rendered final judgment, the Department filled the positions of Commander of the Criminal Intelligence Service, Commander of Narcotics, and Assistant

---

1. The relevant statute provides:
 An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
 (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
 (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.
 Tex. Labor Code Ann. § 21.051 (West 1996).

2. An employee of the State of Texas who alleges employment discrimination must file a complaint with the Texas Commission on Human Rights not later than the 180th day after the date the alleged unlawful employment practice occurred. Tex. Labor Code Ann. § 21.202 (West 1996). Furthermore, any federal complaint of employment discrimination shall be filed with the Equal Employment Opportunity Commission within 180 days; except that if the employee files with a state agency then the employee has 300 days to file. 42 U.S.C.S. § 2000e–5(c) (1989).

 A plaintiff's failure to file a complaint and pursue administrative remedies creates a jurisdictional bar to his claim. See Schroeder v. Texas Iron Works, 813 S.W.2d 483, 488 (Tex.1991).

Commander of Narcotics; also by appointment, and also, allegedly, without a competitive examination. The trial court allowed amendment of Moore's petition to ask for declaratory relief regarding these three additional positions. Subsequently, the trial court rendered final judgment declaring that the Department failed to comply with the competitive examination requirements of section 411.007(b) in hiring the four aforementioned positions, and ordered them vacated and filled through competitive examination. The trial court also awarded Moore attorney's fees. The Department brings this appeal.

## DISCUSSION

■ The Department initially challenges the trial court's jurisdiction to hear Moore's claim. Specifically, the Department argues that section 411.007(b) only establishes norms for the Department in promoting its employees, and fails to create any cause of action in Moore. Additionally, the Department contends that the UDJA likewise fails to create a cause of action in Moore, and cannot be used as a vehicle to interpret section 411.007(b) of the Labor Code. The determination of jurisdiction under the UDJA is a question of law. *See Ainsworth v. Oil City Brass Works,* 271 S.W.2d 754, 760 (Tex.Civ.App.—Beaumont 1954, no writ). We will look first to the jurisdiction of the trial court before deciding whether the court erred in entering its order.

### Jurisdiction and the Declaratory Judgments Act

■ Enacted in 1943, the UDJA confers on Texas courts the authority to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem.Code Ann. § 37.003 (West 1997). The Legislature intended the UDJA to be remedial, to settle and afford relief from uncertainty and insecurity with respect to rights, and to be liberally construed. Tex. Civ. Prac. & Rem. Code Ann. § 37.002 (West 1997). Describing the subject matter available for relief, the UDJA provides:

A person interested under a deed, will, written contract, or other writings constituting a contract or *whose rights, status, or other legal relations are affected by a statute,* municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem.Code Ann. § 37.004 (West 1998) (emphasis added).

■ A suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the Act itself. *Transportation Ins. Co. v. Franco,* 821 S.W.2d 751, 754 (Tex.App.—Amarillo 1992, writ denied). A declaratory judgment, however, is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties; and (2) the controversy will be resolved by the declaration sought. *See Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993)); *see also City of Austin v. L.S. Ranch, Ltd.,* 970 S.W.2d 750, 754, (Tex.App.—Austin 1998, no pet.). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interest and not merely a theoretical dispute. *See Beadle,* 907 S.W.2d at 467. A justiciable controversy must be distinguished from an advisory opinion, which is prohibited under both the Texas and federal constitutions. *See Texas Air Control Bd.,* 852 S.W.2d at 444. A judgment under the UDJA depends on a finding that the issues are not hypothetical or contingent, and the questions presented must resolve an actual controversy. *Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855, 858 (Tex.1979). A justiciable controversy, however, does not necessarily equate with a fully ripened cause of action:

It is not necessary that a person who seeks a declaration of rights under this statute shall have incurred or caused damage or injury in a dispute over rights and liabilities, but it has frequently been held that an action for declaratory judgment would

lie when the fact situation manifests the presence of 'ripening seeds of a controversy.' Such appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy.

*Ainsworth,* 271 S.W.2d at 761.

The crux of this appeal concerns the application of section 411.007(b) to the advancement of personnel within the Department through appointment or promotion. In the section entitled "Officers and Employees," section 411.007(b) provides:

> Appointment or promotion of an officer or employee must be based on merit determined by examination under commission rules that take into consideration the applicant's age, physical condition, experience, and education. Each person who has an application on file for a position in the department shall be given reasonable written notice of the time and place of those examinations.

Tex. Gov't Code Ann. § 411.007(b) (West 1998). The Department originally contends that section 411.007(b) creates no cause of action in Moore, and, therefore, the trial court had no jurisdiction to hear the case. The trial court received its jurisdiction from the controversy created by the Department's application of section 411.007(b) to Moore, not from the words of the statute itself. The UDJA provides for a declaration of rights for persons "whose rights, status, or other legal relations are affected by a statute...." Tex. Civ. Prac. & Rem.Code Ann. § 37.004 (West 1998). Jurisdiction under the UDJA primarily depends on the nature of the controversy; whether the controversy is merely hypothetical or rises to the justiciable level. *See Empire Life Ins.,* 584 S.W.2d at 858.

Moore's interest in being treated according to statute when applying for vacant positions in the Department clearly implicates the UDJA's purpose of clarifying rights affected by statute. The controversy lies not in the actions of the Department in reviewing Moore's application for Assistant Commander of Criminal Intelligence, but in the Department's application of its promotional rules to future appointment vacancies. The Department has already taken an adverse stance to Moore's position by allegedly not requiring competitive examinations when filling the initial vacancy. The Department's repetition of the same behavior in filling three subsequent positions emphasizes the actuality of the controversy. There is clearly a justiciable controversy sufficient to invoke the court's jurisdiction through the UDJA to clarify Moore's, and any other applicant's, rights as they pertain to the Department's hiring procedure. Furthermore, the trial court's declaration resolves the controversy by informing the Department that its actions in filling Assistant Commander and Commander positions without examining applicants based on merit falls outside its statutory authority.

The Department next argues that sovereign immunity shields the Department as an agency of the state. The Department argues that the UDJA does not act to waive the State's ordinary immunity from liability. Suits challenging an agency's action as being outside the scope of its delegated authority are not suits against the State requiring legislative or statutory authority. *Public Util. Comm'n v. City of Austin,* 728 S.W.2d 907, 911 (Tex.App.—Austin 1987, writ ref'd n.r.e.). Because Moore's suit under the UDJA sought a declaration that the Department acted outside its statutory authority in appointing various high-level positions without examining applicants based on merit, no explicit waiver by the State was necessary. Therefore, Moore's suit was not barred by sovereign immunity. We hold the trial court had jurisdiction to hear Moore's claim under the UDJA and overrule the Department's points of error in that regard.

### The Requirement of "Merit–Based" Promotion

We must now determine whether the trial court erred in holding that the Department acted outside its statutory authority when filling the four vacancies. The enabling statutes of the Department clearly provide for merit-based promotion and appointment. *See* Tex. Gov't Code Ann.

§ 411.007(b) (West 1998). That same section further provides for a competitive examination of some sort, and provides that all applicants "shall receive notice of the time and place of such examinations." *Id.* While it is true that the statute, under the section entitled "Duties of Director," reserves for the Director's discretion some positions to be filled by "direct appointment," the section limits these direct appointments to *chiefs of bureaus.* *See* Tex. Gov't Code Ann. § 411.006(6) (West 1998) (emphasis added).[3] No other positions are mentioned.

 Pursuant to section 411.004(3), the Public Safety Commission (the "Commission") promulgated rules governing appointments and promotions. *See* Tex. Gov't Code § 411.004(3) (West 1998).[4] These rules include the policy that the Department shall make *all* appointments based on merit. *See* 37 Tex. Admin. Code § 1.21(a) (1998). In keeping with the policy of making appointments based on merit, the rules provide that "examinations will be conducted for all positions *excepting* unskilled labor, trades, and *direct appointments* made by the Director." 37 Tex. Admin. Code § 1.27 (1998) (emphasis added). Reading the rule in conjunction with the statute, the rule exempts from competitive examination *only* unskilled labor, trades, and the chiefs of bureaus. However, despite the language of the statute restricting directorial appointments to bureau chiefs, and despite the Department's own rules advocating the policy of promotions based on merit, the Department seeks in its General Manual to expand the number of director appointments exempted from competitive examination:

> Positions of major division chief, assistant major division chief, division chief, regional commander, commander, assistant commander, senior Ranger captain, assistant supervisor of Rangers, Director and Assistant Director of Personnel and of Training, other positions deemed necessary and appropriate by the Director and positions of the Director's staff will be filled by direct appointment of the Director.

Texas Department of Public Safety General Manual, Chap. 7, § 26.04(4).

 The Department argues that the Assistant Commander and Commander positions are exempt from competitive examination by virtue of the discretion granted the Department by statute coupled with the listing of director appointments found in the Department's General Manual. In the alternative, the Department argues that, should the Assistant Commander position be subject to competitive examination, the oral interview by Commander Plemons given to applicants should suffice. While we agree with the Department that the statute does provide discretion to the Commission and the Department to create its own rules and to define examination based on merit for purposes of promotional appointments, we reject the notion that the Assistant Commander and Commander positions are exempt, or that the oral interview could fulfill the statutory requirement of a competitive examination. The language of the statute, and that of the Department's own rules, clearly envisions a merit-based promotional system for all those positions not specifically exempted as director appointments. And, according to statute and the rules promulgated by the Commission, Assistant Commander and Commander are not positions so exempted. Furthermore, the mere existence of section 26.04(4) in the Department's General Manual expanding the number of exemptions beyond statutory limits both exceeds the Department's authority and belies the Department's argument that the oral interviews given applicants fulfilled the requirement of a competitive examination.

 Moore argues that the statute contemplates *written* examinations as the proper manifestation of *competitive* examinations. To the extent that Moore seeks affirmation from this Court for his position, we reject it. The Department maintains the discretion to

---

**3.** The relevant section of the statute provides: "The director shall: ... appoint, with the advice and consent of the commission, the chiefs of bureaus provided for by this chapter." Tex. Gov't Code Ann. § 411.006(6) (West 1998).

**4.** The relevant section of the statute provides: "The commission shall ... adopt rules necessary for carrying out the department's work." Tex. Gov't Code Ann. § 411.004(3) (West 1998).

create procedures for competitive examinations regarding promotive appointments, provided such procedures make a good faith effort to comply with the statutory and agency requirement of "merit-based" promotions. The Department should bear in mind, however, that the written notice requirements of the statute regarding a stated time and location for the competitive examination seem to mandate some type of formalized and structured examination.[5] *See* Tex. Gov't Code Ann. § 411.007(b) (West 1998).

### The Injunctive Order

■ The Department next contends that even if the trial court had jurisdiction to declare that the Department failed to comply with section 411.007(b) in hiring Garcia and the others without resort to competitive examination, the trial court had no jurisdiction, or, alternatively, abused its discretion, in ordering the Department to vacate the four positions contested by Moore. We note initially that actions under the UDJA are *sui generis;* they are unique in that the declarations of "rights, status and other legal relations" are not truly legal or equitable. *See Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 713 (Tex.1945); *see also Texas Liquor Control Bd. v. Canyon Creek Land Corp.,* 456 S.W.2d 891, 895 (Tex.1970). We further note that, at the time of the trial court's rendition of final judgment, Moore's discrimination claim had been dismissed through summary judgment; thus the trial court's authority to act was based on the UDJA alone. Moore argues that the UDJA allows the trial court to grant the injunctive relief requested, namely the vacation of the four positions, as ancillary to the declaratory relief awarded. *See* Tex. Civ. Prac. & Rem. Code § 37.011 (West 1998); *see also Davis v. Pletcher,* 727 S.W.2d 29, 35 (Tex.App.—San

Antonio 1987, writ ref'd n.r.e.). Under the facts presented here, we disagree.

■ As Moore suggests, the UDJA allows for injunctive relief ancillary to a declaration of rights in some situations: "[F]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application must be by petition to a court having jurisdiction to grant relief." Tex. Civ. Prac. & Rem.Code. Ann. § 37.011 (West 1998).[6] This power to grant ancillary relief is conditioned on such relief being *necessary and proper.* For the following reasons, such relief in this case is inappropriate.

■ Regarding Moore's original reverse discrimination claim, filing a complaint with the Human Rights Commission and exhausting administrative remedies was a mandatory prerequisite to filing a civil action alleging a violation of the Human Rights Act under the Texas Labor Code. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 488 (Tex. 1991). The rationale for this result is that the Human Rights Act provides the *exclusive remedy* for alleged discrimination in administrative agency personnel decisions. *See Stinnett v. Williamson County Sheriff's Dep't,* 858 S.W.2d 573, 577 (Tex.App.—Austin 1993, writ denied). Thus, Moore's failure to exhaust his administrative remedies was a jurisdictional bar to filing a discrimination claim in district court, and the trial court properly granted summary judgment against Moore's claim. *Schroeder,* 813 S.W.2d at 488.

■ This procedural posture becomes important with regard to the trial court's award of injunctive relief based solely on jurisdiction under the UDJA because it allows Moore to circumvent the exclusive remedies provided for, and the purposes contained in, the Human Rights Act.

---

**5.** We reject, for example, the suggestion made by the Department at oral argument that an official with the Department could discharge the Department's responsibility to offer a competitive examination by merely *examining* the personnel records of the applicants.

**6.** Several courts, including this one, have interpreted section 37.011 of the UDJA as allowing parties to combine a request for declaratory re-

lief with a request for injunction. *See Weaver v. AIDS Servs. of Austin, Inc.,* 835 S.W.2d 798, 803 (Tex.App.—Austin 1992, writ denied) (AIDS services group seeking declaration of rights and injunction barring protestors from interfering with workshops); *Davis,* 727 S.W.2d at 35 (purchaser of real property seeking declaration interpreting various property conveyances and injunction to halt triggering of acceleration clause).

The Human Rights Act includes a provision for injunctive relief from unlawful employment practices. *See* Tex. Labor Code Ann. § 21.210 (West 1996). This provision represented Moore's exclusive injunctive remedy until his administrative remedies had been exhausted. Moore could have sought an injunction to halt the Department from promoting Garcia and the other three appointments had he followed the proper administrative procedures. He failed to do so. He sought and received in district court a declaration that the Department had misinterpreted and misapplied section 411.007(b). This declaration clarified Moore's rights and status regarding future vacancies in the Department. However, the order by the trial court retroactively vacating the four Assistant Commander and Commander positions rewarded Moore for failing to follow the exclusive remedies provided for him by law. Declaratory relief creates no substantive rights. *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994). It provides a procedural device for the determination of controversies which are already within the jurisdiction of the court. *Id.* The remedy afforded by the UDJA is additional and does not supplant any existing remedy. *Cobb,* 190 S.W.2d at 713; *Crow v. City of Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922, 924 (Tex.1948). Because the exclusive remedy available to Moore regarding his reverse discrimination claim is the Human Rights Act, which contains the right to injunctive relief, the trial court erred in vacating the positions in the Department based solely on the ancillary injunctive power contained in the UDJA.

Furthermore, the trial court's order undercut the purpose of the Human Rights Act to create a comprehensive administrative review. *See Stinnett,* 858 S.W.2d at 577. The Human Rights Act was intended to embody the policies embedded in Title VII, 42 U.S.C. § 2000e *et seq.,* including "administrative procedures involving informal conference, conciliation and persuasion, as well as judicial review of administrative action." *Schroeder,* 813 S.W.2d at 487. Allowing the jurisdiction created by the UDJA to circumvent the procedures and remedies provided by the Human Rights Act could create a back door to district court not contemplated by the Legislature. The proper remedy for Moore is prospective. His declaratory judgment carries preclusive effect in any future lawsuit, whether administrative or judicial, should the Department fail to offer him notice and the opportunity for merit-based promotion as required by section 411.007(b). *See Valley Oil Co. v. City of Garland,* 499 S.W.2d 333, 335 (Tex.Civ.App.—Dallas 1973, no writ). Thus, the retroactive injunctive relief ordered by the trial court was not "necessary and proper" as required under the UDJA before ancillary injunctive relief could be awarded. We reverse the trial court's order vacating the Department's appointments of Assistant Commander of Criminal Intelligence Service, Commander of Criminal Intelligence Service, Commander of Narcotics, and Assistant Commander of Narcotics.

### Attorney's Fees

■ The trial court awarded Moore attorney's fees under the UDJA. The UDJA provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The Texas Supreme Court has expressly held that "by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the [U]DJA necessarily waives governmental immunity for such awards." *Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 446 (Tex.1994). The grant or denial of attorney's fees in a declaratory judgment lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985).

■ The Department argues that the UDJA may not be used solely as a vehicle for attorney's fees. *See HECI Exploration Co. v. Clajon Gas Co.,* 843 S.W.2d 622, 637 (Tex. App.—Austin 1992, writ denied). Since we have held that the trial court had jurisdiction to construe section 411.007(b) and that the trial court's construction of that statute favors Moore, Moore has achieved a declara-

tion of rights entitling him to seek the additional relief of attorney's fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 37.009 (West 1997). The Department's argument fails. The Department also objects to the award of attorney's fees in the final judgment based upon affidavits of the competing parties, claiming that the affidavits do not represent competent evidence that the attorney's fees were reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991). We refuse to hold that this procedure for determining attorney's fees rises to the level of an abuse of discretion. We overrule the Department's point of error regarding attorney's fees.

### CONCLUSION

We affirm the order of the trial court declaring that the Department acted outside its statutory duty pursuant to section 411.007(b) in filling four Assistant Commander and Commander positions without examining applicants based on merit. We further affirm the order of the trial court awarding attorney's fees. We reverse the order of the trial court vacating the four Assistant Commander and Commander positions and hold that Moore's only injunctive relief must be prospective.